**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| HOUSTON SPECIALTY INSURANCE COMPANY, | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: |
| RISK & INSURANCE MANAGEMENT SERVICES, INC., d/b/a EAGLEONE; CANNON COCHRAN MANAGEMENT SERVICES, INC., a/k/a CCMSI; LINDA KIND, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff Houston Specialty Insurance Company ("HSIC"), by and through its undersigned counsel, states as follows for its complaint for declaratory judgment against Defendants Risk & Insurance Management Services, Inc., d/b/a EagleOne ("EagleOne"); Cannon Cochran Management Services, Inc., a/k/a CCMSI ("CCMSI"); and Linda Kind ("Kind");

**NATURE OF THE ACTION**

1.       HSIC seeks a determination of its rights and obligations under an insurance policy it issued to EagleOne in connection with a lawsuit filed in the Circuit Court of Cook County, Law Division, Case No. 24L012465, captioned *Linda Kind v. City of Chicago, Cannon Cochran Management Services, Inc., a/k/a CCMSI, Risk & Insurance Management Services, Inc., d/b/a EagleOne Case Management Solutions, Inc.* (the "Underlying Action").

**JURISDICTION AND VENUE**

2.       This is an action for declaratory judgment brought pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201.

3.       This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), as

this action is between citizens of different states and the amount in controversy exceeds $75,000.

4. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b), because it is the judicial district in which a substantial part of the events giving rise to this coverage dispute occurred, and the judicial district in which all the defendants reside..

5. Plaintiff HSIC is a Texas company domiciled in the state of Texas, with its principal place of business in Houston, Texas.

6. Upon information and belief, Defendant EagleOne is a corporation domiciled in the State of Illinois, with its principal place of business in Burr Ridge, Illinois.

7. Upon Information and belief, Defendant CCMSI is a corporation domiciled in the State of Illinois. with its principal place of business in Danville, IL.

8. Upon information and belief, Defendant Kind is an individual domiciled in the State of Illinois. HSIC does not assert any claims against Kind, who has been named as a defendant in this action solely as a necessary party.

## THE UNDERLYING ACTION

9. On May 7, 2026, Kind filed a Third Amended Complaint (the "Complaint") in the Underlying Action. A true and correct copy of the Complaint is attached hereto as Exhibit A.

10. The Complaint alleges that on July 31, 2024, Kind was walking on the sidewalk along the east side of Michigan Avenue near the intersection of Michigan Avenue and Wacker Drive when she tripped on a raised and unmarked board on the sidewalk. *See* Ex. A, *General Allegations*, at ¶¶ 11-13.

11. The Complaint alleges that the City of Chicago controlled the subject sidewalk and failed to repair and otherwise allowed a dangerous or defective condition to exist on the sidewalk, which caused Kind to trip and fall, causing bodily injury. *See* Ex. A, *General*

2

*Allegations*, at ¶¶ 1-10.

12.     The Complaint contains causes of action for negligence, premises liability, willful and wanton, and spoliation against the City of Chicago. *See* Ex. A, Counts I-IV.

13.     The Complaint contains a cause of action for spoliation against CCMSI. *See* Ex. A, Count V.

14.     Count V of the Complaint alleges that "CCMSI, including its employees and/or agents, was retained, hired, contracted, and/or employed by the CITY to correspondence [sic], adjust, handle, investigate, evaluate, manage, resolve, and/or represent the CITY regarding property damage over $2,500.00 and all bodily injury/personal injury claims against the CITY." *See* Ex. A at Count V, ¶ 12.

15.     The Complaint alleges that CCMSI created and preserved evidence and claims related to property damage and bodily injury/personal injury claims against the City of Chicago, which included investigative materials, evidence, preservation requests, communication, electronic communications, photographs, and/or other requests related to said claims. *See* Ex. A at Count V, ¶¶ 13-14.

16.     The Complaint alleges that after Kind notified the City of Chicago of the incident, CCMSI acknowledged assignment of the matter and requested information concerning location of the incident, injuries, and photographs. *See* Ex. A at Count V, ¶¶ 19-20.

17.     The Complaint alleges that Kind demanded preservation "any of the boards affixed to this area and preserve any and all records regarding any maintenance, complaints, repairs, to the sidewalk/bridge/walkways, and installation of any boards in said area," and that CCMSI notify Kind of "any plans to perform any maintenance, repair, upkeep to said area, as failure to notify us of same will be consider spoliation of evidence should said maintenance, repairs, or upkeep be undertaken or completed." *See* Ex. A at Count V, ¶ 23.

18.     The Complaint alleges that CCMSI had a duty of care to preserve the boards

3

and to notify Kind of any plans, scheduling, work, modification, destruction, and/or repairs being made to the sidewalks/walkways and boards that caused Kind's injuries. *See* Ex. A at Count V, ¶ 29.

19. The Complaint alleges that CCMSI "knew or should have foreseen that the boards and/or sidewalk/walkway would be material to this civil litigation, especially given the notification of the request to preserve evidence and identification in the Complaint at Law and written discovery." *See* Ex. A at Count V, ¶ 35.

20. The Complaint alleges that CCMSI "never notified, warned, contacted, and/or informed Kind of any removal, scheduling, destruction, permitting, plans, correction, repairs, discarding, and/or work on the boards on the eastside and/or westside on the sidewalk/walkways" and the removal and the replacement of the boards deprived Kind of key evidence. *See* Ex. A at Count V, ¶¶ 36-37.

21. The Complaint contains causes of action for spoliation against EagleOne, both as an agent/employee of the City of Chicago, and as an agent/employee of CCMSI. *See* Ex. A at Counts VI and VII.

22. The Complaint alleges that EagleOne was "retained, hired, contracted, and/or employed by the CITY to correspondence [sic], adjust, handle, investigate, evaluate, manage, resolve, and/or represent the CITY regarding property damage over $2,500.00 and all bodily injury/personal injury claims against the CITY." *See* Ex. A at Counts VI and VII, ¶¶ 12-14

23. The Complaint alleges that after Kind notified the City of Chicago of the incident, EagleOne acknowledged assignment of the matter and requested information concerning location of the incident, injuries, and photographs. *See* Ex. A at Counts VI and VII, ¶¶ 19-20.

24. The Complaint alleges that Kind demanded preservation "any of the boards affixed to this area and preserve any and all records regarding any maintenance, complaints,

4

repairs, to the sidewalk/bridge/walkways, and installation of any boards in said area," and that EagleOne notify Kind of "any plans to perform any maintenance, repair, upkeep to said area, as failure to notify us of same will be consider spoliation of evidence should said maintenance, repairs, or upkeep be undertaken or completed." *See* Ex. A at Counts VI and VII, ¶ 23.

25. The Complaint alleges that EagleOne had a duty of care to preserve the boards and to notify Kind of any plans, scheduling, work, modification, destruction, and/or repairs being made to the sidewalks/walkways and boards that caused Kind's injuries. *See* Ex. A at Counts VI and VII, ¶ 29.

26. The Complaint alleges that EagleOne "knew or should have foreseen that the boards and/or sidewalk/walkway would be material to this civil litigation, especially given the notification of the request to preserve evidence and identification in the Complaint at Law and written discovery." *See* Ex. A at Counts VI and VII, ¶ 35.

27. The Complaint alleges that EagleOne "never notified, warned, contacted, and/or informed Kind of any removal, scheduling, destruction, permitting, plans, correction, repairs, discarding, and/or work on the boards on the eastside and/or westside on the sidewalk/walkways" and the removal and the replacement of the boards deprived Kind of key evidence. *See* Ex. A at Counts VI and VII, ¶¶ 36-37.

**THE POLICY**

28. HSIC issued Miscellaneous Professional Liability Policy No. MEO-HS-0006859-01 to EagleOne for the policy period of July 1, 2025 to July 1, 2026 (the "Policy"). The Policy provides liability limits of $1,000,000 for each Claim and $1,000,000 in the aggregate for all Claims, subject to a $5,000 Retention applicable to each Claim. A true and correct certified copy of the Policy is attached hereto as Exhibit B.

29. The Miscellaneous Professional Liability coverage part of the Policy states, in pertinent part, as follows:

5

**SECTION I – INSURING AGREEMENT**

**A. Miscellaneous Professional Liability**

1. The **Company** will pay **Claim Expenses** and **Damages** an **Insured** becomes legally obligated to pay as a result of a **Claim:**

    a. first made against the **Insured** during the **Policy Period**;
    b. reported in writing to the **Company** during the **Policy Period**, or any applicable Extended Reporting Period; and
    c. alleging a **Wrongful Act** that first occurred after the **Retroactive Date**,

    provided that, prior to the inception date of this Policy or the first such policy issued and continually renewed by the **Company**, no **Insured** knew or could have reasonably expected that the **Wrongful Act** might give rise to a **Claim**…

Ex. B at Pg. 15 of 31.

30.     **SECTION II – DEFINITIONS** of the Policy contains the following relevant definitions:

   A. **Bodily Injury** means the physical injury, sickness or disease sustained by a person; death resulting from such physical injury, sickness or disease; and disability, mental anguish, mental injury, emotional distress, pain or suffering, or shock or fright resulting from such physical injury, sickness or disease.

   * * *

   J. **Individual Insured(s)** means:

      1. any past or present partner, officer, director or employee of the **Named Insured** (and in the event of their death or incapacity, any estate or legal representative) performing **Professional Services** on behalf of the **Named Insured**;
      2. any independent contractor, temporary worker, or leased employee performing **Professional Services** on behalf of the **Named Insured**;

   K. **Insured** means **Named Insured**, **Individual Insureds** and **Domestic Partner**.

   L. **Named Insured** means the person or entity identified on the Declarations and its **Subsidiaries.**

   * * *

   P. **Professional Services** means those services stated in the Declarations when performed by the **Insured** in the ordinary conduct of the **Insured's**

6

profession for or on behalf of a customer or client for a fee or other monetary compensation.

\* \* \*

**Y.** **Wrongful Act** means any actual or alleged breach of duty, negligent act, error, omission or **Personal Injury** offense committed by an **Insured** solely in the performance of, or failure to perform, **Professional Services**.

Ex. B at Pg. 16-19 of 31.

31.     The Policy Declarations list "Nurse Case Management" as the covered Professional Services. Ex. B. at Pg. 10 of 31.

32.     **SECTION III – EXCLUSIONS** of the Policies contains the following relevant exclusion:

This Policy does not apply to any **Claim** alleging or any **Damages** or **Claim Expenses** arising out of, based upon, relating to, or otherwise attributable to:

\* \* \*

**B.  Bodily Injury** or **Property Damage**;

Ex. B at Pg. 19 of 31.

**COUNT I**
**DECLARATORY JUDGMENT – NO DUTY TO DEFEND**

33.     HSIC incorporates by reference herein paragraphs 1 through 32, as if fully set forth herein.

34.     There is an actual and legal controversy with regard to the parties' rights and obligations under the Policy.

35.     HSIC contends that it has no obligation to defend EagleOne or CCMSI under the Policy against the allegations set forth in the Complaint filed in the Underlying Action.

36.     Pursuant to the Policy's Insuring Agreement, the Policy provides coverage for "Claim Expenses and Damages that an Insured becomes legally obligated to pay as a result of a Claim" first made against the Insured during the Policy Period and reported to the Company

either during the Policy Period or during any applicable Extended Reporting Period, alleging a Wrongful Act that first occurred after the Retroactive Date. . .” *See* Ex. B at Pg. 15 of 31.

37. The Policy defines Insured to mean the “Named Insured, Individual Insureds and Domestic Partner.” *See* Ex. B at Pg. 17 of 31.

38. The Policy defines Named Insured to mean “the person or entity identified on the Declarations and its Subsidiaries.” *See* Ex. B at Pg. 17 of 31.

39. The Named Insured identified on the Declarations page is EagleOne. *See* Ex. B at Pg. 10 of 31.

40. CCMSI is not the Named Insured, nor is CCMSI an “Insured” as that term is defined by the Policy. The only Insured under the Policy is EagleOne. Accordingly, HSIC has no duty to defend CCMSI in the Underlying Action because it is not an Insured.

41. Further, HSIC has no duty to defend EagleOne or CCMSI in the Underlying Action because there are no allegations of a Wrongful Act in the performance of Professional Services by or on behalf of an Insured.

42. The Policy defines Wrongful Act to mean “any actual or alleged breach of duty, negligent act, error, omission or Personal Injury offense committed by an Insured solely in the performance of, or failure to perform, Professional Services.” *See* Ex. B at Pg. 19 of 31.

43. The Policy defines Professional Services to mean “those services stated in the Declarations when performed by the Insured in the ordinary conduct of the Insured's profession for or on behalf of a customer or client for a fee or other monetary compensation.” *See* Ex. B at Pg. 18 of 31.

44. The Declarations list “Nurse Case Management” as the covered Professional Services. *See* Ex. B at Pg. 10 of 31.

45. The Complaint alleges that CCMSI was retained by the City of Chicago to, inter alia, adjust, investigate, manage and resolve claims of "property damage over $2,500.00 and all bodily injury/personal injury claims against the CITY". *See* Ex. A at Count V, ¶¶ 12-14.

46. The Complaint alleges that EagleOne was retained by the City of Chicago to, *inter alia*, adjust, investigate, manage, and resolve claims of "property damage over $2,500.00 and all bodily injury/personal injury claims against the CITY". *See* Ex. A at Counts VI and VII, ¶¶ 12-14.

47. None of the alleged wrongdoing against EagleOne or CCMSI arises out of the performance of or failure to perform "Nurse Case Management" services for a customer or client for a fee or other monetary compensation, as required by the Policy, and the Complaint therefore does not allege a Wrongful Act arising out of Professional Services.

48. Accordingly, HSIC has no duty under the Policy to defend EagleOne or CCMSI in the Underlying Action.

49. Additionally, Exclusion B. states that the "Policy does not apply to any Claim alleging or any Damages or Claim Expenses arising out of, based upon, relating to, or otherwise attributable to . . . Bodily Injury or Property Damage". *See* Ex. B at Pg. 19 of 31.

50. The Policy defines Bodily Injury to mean, in pertinent part, "the physical injury, sickness or disease sustained by a person…" *See* Ex. B at Pg. 16 of 31.

51. The Policy defines Property Damage to mean "physical injury to or destruction of property, including all resulting loss of use of that property; or loss of use of tangible property that is not physically injured. *See* Ex. B at Pg. 18 of 31.

52. The Underlying Action alleges Bodily Injury sustained by Kind. *See* Ex. A, *General Allegations*, ¶¶ 1-13.

53. The Underlying Action alleges Property Damage in the destruction and loss of use of the boards. *See* Ex. A, *General Allegations*, Count IV, Count V, Count VI, Count VII.

54.    Coverage is therefore barred under Exclusion B, and HSIC thus owes no duty to defend EagleOne or CCMSI in the Underlying Action.

WHEREFORE, Plaintiff HSIC requests that this Court enter an Order granting the following relief:

1.    Declaring the respective rights and obligations of the parties under the Policy;

2.    Declaring that HSIC has no duty to defend EagleOne or CCMSI with respect to the claims asserted against them in the Complaint filed in the Underlying Action; and

3.    Awarding any and all other relief that this Court deems appropriate.

## COUNT II
## DECLARATORY JUDGMENT – NO DUTY TO INDEMNIFY

55.    HSIC incorporates by reference herein paragraphs 1 through 32, as if the same were fully set forth at length.

56.    There is an actual and legal controversy with regard to the parties' rights and obligations under the Policy.

57.    HSIC contends that it has no obligation to indemnify EagleOne or CCMSI under the Policy against the allegations set forth in the Complaint filed in the Underlying Action.

58.    Pursuant to the Policy's Insuring Agreement, the Policy provides coverage for "Claim Expenses and Damages that an Insured becomes legally obligated to pay as a result of a Claim" first made against the Insured during the Policy Period and reported to the Company either during the Policy Period or during any applicable Extended Reporting Period, alleging a Wrongful Act that first occurred after the Retroactive Date, provided that, "prior to the inception date of this Policy . . . no Insured knew or could have reasonably expected that the Wrongful Act might give rise to a Claim." *See* Ex. B at Pg. 15 of 31.

59.    The Policy defines Insured to mean the "Named Insured, Individual Insureds and Domestic Partner." *See* Ex. B at Pg. 17 of 31.

10

60. The Policy defines Named Insured to mean "the person or entity identified on the Declarations and its Subsidiaries." *See* Ex. B at Pg. 17 of 31.

61. The Named Insured identified on the Declarations page is EagleOne. *See* Ex. B at Pg. 10 of 31.

62. The Policy defines Individual Insured to mean any past or present partner, officer, director or employee of the Named Insured performing Professional Services on behalf of the Named Insured or any independent contractor, temporary worker, or leased employee performing Professional Services on behalf of the Named Insured. *See* Ex. B at Pg. 17 of 31.

63. CCMSI is not the Named Insured, nor is CCMSI an "Insured" as that term is defined by the Policy. The only Insured under the Policy is EagleOne. Accordingly, HSIC has no duty to indemnify CCMSI in the Underlying Action because it is not an Insured.

64. Further, HSIC has no duty to indemnify EagleOne or CCMSI in the Underlying Action because there are no allegations of a Wrongful Act in the performance of Professional Services by or on behalf of an Insured.

65. The Policy defines Wrongful Act to mean "any actual or alleged breach of duty, negligent act, error, omission or Personal Injury offense committed by an Insured solely in the performance of, or failure to perform, Professional Services." *See* Ex. B at Pg. 19 of 31.

66. The Policy defines Professional Services to mean "those services stated in the Declarations when performed by the Insured in the ordinary conduct of the Insured's profession for or on behalf of a customer or client for a fee or other monetary compensation." *See* Ex. B at Pg. 18 of 31.

67. The Declarations list "Nurse Case Management" as the covered Professional Services. *See* Ex. B at Pg. 10 of 31.

11

68.     The Complaint alleges that CCMSI was retained by the City of Chicago to, inter alia, adjust, investigate, manage and resolve claims of "property damage over $2,500.00 and all bodily injury/personal injury claims against the CITY". *See* Ex. A at Count V, ¶¶ 12-14.

69.     The Complaint alleges that EagleOne was retained by the City of Chicago to, *inter alia*, adjust, investigate, manage, and resolve claims of "property damage over $2,500.00 and all bodily injury/personal injury claims against the CITY". *See* Ex. A at Counts VI and VII, ¶¶ 12-14.

70.     None of the alleged wrongdoing against EagleOne or CCMSI arises out of the performance of or failure to perform "Nurse Case Management" services for a customer or client for a fee or other monetary compensation, as required by the Policy, and the Complaint therefore does not allege a Wrongful Act arising out of Professional Services.

71.     Accordingly, HSIC has no duty under the Policy to indemnify EagleOne or CCMSI in the Underlying Action.

72.     Additionally, Exclusion B. states that the "Policy does not apply to any Claim alleging or any Damages or Claim Expenses arising out of, based upon, relating to, or otherwise attributable to . . . Bodily Injury or Property Damage". *See* Ex. B at Pg. 19 of 31.

73.     The Policy defines Bodily Injury to mean, in pertinent part, "the physical injury, sickness or disease sustained by a person…" *See* Ex. B at Pg. 16 of 31.

74.     The Policy defines Property Damage to mean "physical injury to or destruction of property, including all resulting loss of use of that property; or loss of use of tangible property that is not physically injured. *See* Ex. B at Pg. 18 of 31.

75.     The Underlying Action alleges Bodily Injury sustained by Kind. *See* Ex. A, *General Allegations*, ¶¶ 1-13.

76.     The Underlying Action alleges Property Damage in the destruction and loss of use of the boards. *See* Ex. A, *General Allegations*, Count IV, Count V, Count VI, Count VII.

77.     Coverage is therefore barred under Exclusion B, and HSIC thus owes no duty to indemnify EagleOne or CCMSI in the Underlying Action.

WHEREFORE, Plaintiff HSIC respectfully requests that this Court enter an Order granting the following relief:

1.     Declaring the respective rights and obligations of the parties under the Policy at issue;

2.     Declaring that HSIC has no duty to indemnify EagleOne or CCMSI with respect to the claims asserted against it in the Underlying Action; and

3.     Awarding any and all other relief that this Court deems appropriate.


Dated: July 22, 2026          Respectfully Submitted,

By:     s/*Samuel R. Stalker*
        Samuel R. Stalker (Illinois Bar No. 6300938)
        Ryan J. Chancellor (Illinois Bar No. 6338806)
        Sam.Stalker@kennedyslaw.com
        Ryan.Chancellor@kennedyslaw.com
        KENNEDYS CMK LLP
        30 South Wacker Drive, Suite 3650
        Chicago, IL 60606
        Phone: (312) 800-5000
        Fax: (312) 207-2110

        *Attorneys for Plaintiff Houston Specialty Insurance Company*